**IN THE COURT OF APPEALS OF IOWA**

No. 25-0358
Filed May 21, 2025

**IN THE INTEREST OF H.S. and R.B.,**
**Minor Children,**

**S.B., Mother,**
     Appellant.
_____

     Appeal from the Iowa District Court for Polk County, Lynn Poschner, Judge.

     The mother appeals the termination of her parental rights. **AFFIRMED**.

     Colin McCormack of Van Cleaf & McCormack Law Firm, LLP, Des Moines, for appellant mother.

     Brenna Bird, Attorney General, and Mackenzie Moran, Assistant Attorney General, for appellee State.

     Megil Patterson of Youth Law Center, Des Moines, attorney and guardian ad litem for minor children.

     Considered without oral argument by Greer, P.J., and Badding and Chicchelly, JJ.

**GREER, Presiding Judge.**

The mother appeals the termination of her parental rights to two of her children, H.S., born in 2021, and R.B., born in 2023. She argues the juvenile court should have granted a six month extension of the termination proceedings to allow her additional time to reunify with her children. After our de novo review, *In re P.L.*, 778 N.W.2d 33, 40 (Iowa 2010), we affirm the juvenile court's termination of the mother's parental rights.

"Iowa Code sections 232.117(5) and 232.104(2)(b) [(2025)] allow the court to grant an extension of time if parental rights are not terminated following the termination hearing." *In re D.P.*, No. 21-0884, 2021 WL 3891722, at *2 (Iowa Ct. App. Sept. 1, 2021). To grant extension, the juvenile court must "make a determination the need for removal will no longer exist at the end of the extension." *In re A.A.G.*, 708 N.W.2d 85, 92 (Iowa Ct. App. 2005). "The judge considering [the extension] should however constantly bear in mind that, if the plan fails, all extended time must be subtracted from an already shortened life for the children in a better home." *In re A.C.*, 415 N.W.2d 609, 614 (Iowa 1987). The patience afforded a "parent can quickly translate into intolerable hardship for the children." *In re R.J.*, 436 N.W.2d 630, 636 (Iowa 1989). With that in mind, we must also consider whether granting the parent additional time to work toward reunification— which delays permanency for the children—is in the best interests of the children. *See In re W.T.*, 967 N.W.2d 315, 323 (Iowa 2021).

Our paramount concern in termination proceedings is the children's best interests. *In re J.E.*, 723 N.W.2d 793, 798 (Iowa 2006). In determining the children's best interests, our courts "give primary consideration to the child[ren]'s

safety, to the best placement for furthering the long-term nurturing and growth of the child[ren], and to the physical, mental, and emotional condition and needs of the child[ren]." Iowa Code § 232.116(2). "[W]e look to the child[ren]'s long-range as well as immediate interests." *In re C.K.*, 558 N.W.2d 170, 172 (Iowa 1997). And "we look to the parent['s] past performance because it may indicate the quality of care the parent is capable of providing in the future." *Id.*

The mother asked the juvenile court for an extension of time because she was "taking [steps] to change her past patterns of drug use, most notably removing herself from the environment that had fostered such use and moving to an area where she had supportive family members (specifically her mother) to help ensure long-term sobriety." Although we encourage any and all progress towards sobriety, the legal standard for extension requires that any barrier preventing reunification be resolved within the additional time period. *A.A.G.*, 708 N.W.2d at 92. In this case, we cannot find the record supports the mother will establish and maintain sobriety within the next six months.

The mother has an extensive history of substance use. She reports she started using illicit substances in 2012. From 2012 to 2015, the mother was incarcerated. After being released, the mother relapsed and sought inpatient treatment in 2016. Eventually, the mother returned to prison and, after release, gave birth to a child not at issue in this matter in July 2018. That child tested positive for methamphetamine at birth, leading to termination of the mother's rights to that child in 2019. When the mother gave birth to H.S. in 2021, the child tested positive for methamphetamine, resulting in removal of the child once the Iowa Department of Health and Human Services (HHS) became involved that same

month. That child-in-need-of-assistance case eventually closed, and H.S. was returned to the mother's custody.

But signs of the mother's continued involvement with substances became apparent. In October 2023, the mother was pulled over for a moving violation with H.S. in the vehicle. The mother's passenger was arrested for possession of methamphetamine. R.B. was born in November. Then, on February 18, 2024, the mother was again pulled over, and this time she was found to be in possession of a pipe used to smoke methamphetamine. Shortly thereafter, in April, H.S. was drug tested; the child tested positive for methamphetamine, amphetamine, and fentanyl. On April 15, both H.S. and R.B. were removed from the mother's custody by ex parte order, with HHS citing the mother's methamphetamine use as the basis for removal.[1] The mother tested positive for methamphetamine and benzodiazepines on June 19.

After the juvenile court removed H.S. and R.B., the mother participated in at least five drug treatment programs. The mother asserted that she used methamphetamine to help with her depression, yet at the time of the October permanency hearing, the mother was not compliant with mental-health treatment or following through with drug testing. Despite repeated attempts at achieving and maintaining sobriety, the mother admitted that she used illicit substances on November 4, 2024. But the evidence suggests she continued to use after November, as she gave birth to a fourth child,[2] who tested positive for methamphetamine on or about January 10, 2025, the same day the underlying

---

[1] The removal was continued following a hearing. *See* Iowa Code § 232.95.
[2] The fourth child is not at issue in this appeal.

termination trial commenced. The mother had the fourth child out-of-state after she asked to have the January 10 termination trial continued because she was having contractions; she then drove to Missouri to have the baby. The mother remained in Missouri, where she testified from on the second day of the termination trial on February 10. She stated that she is making plans for future treatment, but she still was not in mental-health therapy.

The mother has struggled with illicit substances, especially methamphetamine, for more than a decade. At the termination trial, she admitted her longest period of sobriety during the pendency of the child-welfare proceedings was a "couple months." According to the mother's own testimony, she continued "to use methamphetamine throughout this case." The mother's past decisions inform what the mother is likely to do in the future. *See C.K.*, 558 N.W.2d at 172. Based on foregoing, we cannot find that the mother is likely to achieve and maintain sobriety in the next six months and, as a result, cannot conclude an extension of time is warranted. *See In re J.P.*, No. 19-1633, 2020 WL 110425, at *2 (Iowa Ct. App. Jan. 9, 2020) ("A parent's methamphetamine use, in itself, creates a dangerous environment for children."); *In re K.V.*, No. 19-1775, 2020 WL 110439, at *1 (Iowa Ct. App. Jan. 9, 2020) ("Even assuming the mother has managed six months of sobriety, a short period of sobriety is not a reliable indicator of her ability to remain sober when considered in light of her history, which includes ten years of substance use and several prior failed attempts at sobriety."); *In re C.C.*, No. 24-1924, 2025 WL 1076767, at *4 (Iowa Ct. App. Apr. 9, 2025) ("We commend the mother for reaching six months of sobriety. But, ultimately, we must

conclude that six months of sobriety is inadequate to show that the mother will maintain sobriety in the long term.").

Additionally, termination of the mother's rights and adoption of the children is in the children's best interests.  *See J.E.*, 723 N.W.2d at 798.  Here, the social work case manager testified that H.S. and R.B. "have thrived" in their current placement.  The relative placement "has met their medical needs [and] emotional needs."  Now, the children "have some stability, and they feel safe."  When asked what is best for the "long-term growth [and] nurturing" of the children, the HHS representative responded that termination, followed by adoption, would be best.  A stable, permanent home, free from substance use, is in the best interest of the children.  *See In re A.M.*, 843 N.W.2d 100, 112 (Iowa 2014) ("It is well-settled law that we cannot deprive a child of permanency after the State has proved a ground for termination . . . by hoping someday a parent will learn to be a parent and be able to provide a stable home for the child."  (citation omitted)); *In re W.M.*, 957 N.W.2d 305, 314 (Iowa 2021) ("[W]e cannot deprive these children of a stable home on the hope that Mom will someday be able to succeed in her efforts to remain sober.").  As the children appear to be doing well in their current placement, one with great promise of stability and sobriety, we find termination of parental rights is in the best interests of the children.

We affirm the termination of the mother's parental rights.

**AFFIRMED.**